JOHNS, APPELLEE, *v.* THE STATE OF OHIO, APPELLANT.

[Cite as Johns v. State (1981), 67 Ohio St. 2d 325.]

(No. 80-1450—Decided July 22, 1981.)

*Mr. Edwin F. Woodle,* for appellee.

*Mr. William J. Brown,* attorney general, and *Mr. Warren M. Enders,* for appellant.

PUTMAN, J. A defendant has no common-law claim against the state for damages after he has obtained his release upon a writ of habeas corpus for violation of his constitutional rights. See *Tymcio* v. *State* (1977), 52 Ohio App. 2d 298.

*Cuyler* v. *Sullivan* (1980), 446 U. S. 335, recently held that the right of the accused to adequate representation of counsel includes the counsel which he personally selects and privately retains. However, this does not give him a right of civil action against the state government based solely upon the alleged shortcomings of such counsel.

In the case *sub judice,* the General Assembly did not attempt to vote Johns an unconditional grant of a specific sum as a "moral claim" or upon any other basis. Whether it could have done so in such a case is not before us and we make no decision thereon.

The General Assembly, aware of *Johns* v. *Perini, supra,* and its conditional nature, limited its grant of access to the public treasury to the prior condition that the Court of Claims hear the evidence *de novo* upon whether justice had been done in Johns' state trial. The argument that *Johns* v. *Perini, supra,* is *res judicata* misses the mark completely. The point is that the decision in *Johns* v. *Perini, supra,* does not make the state liable nor does it obligate the General Assembly or limit it in the options it has available to impose as a precondition of its discretionary opening of the public treasury. The General Assembly understands that evidentiary restrictions coupled with the heavy burden of proof upon the state frequently lead to final releases from imprisonment irrespective of actual innocence of the accused or objectionable conduct on the part of the government.

There is no "presumption" that a released prisoner is entitled to a key to the public treasury. The General Assembly in-

tended to defer to the Court of Claims on the separate question of whether the state of Ohio was responsible for Johns' incarceration in such a way as to warrant any discretionary payment of tax dollars to him. Upon that question no prior judicial decision could be *res judicata.* That issue could not have been ligated in *Johns* v. *Perini, supra.*

In its opinion in the first appeal, the Court of Appeals for Franklin County correctly captured and clearly restated that unequivocal legislative purpose. In the second appeal of this cause, that court, comprised of a different panel, erroneously departed from "the law of the case" it had previously correctly declared.

The Court of Claims correctly followed the mandate of the Court of Appeals when, upon retrial, it entered a judgment in favor of the state upon the plaintiff having failed to adduce any evidence on the first issue in the legislative mandate.

Accordingly, the judgment of the Court of Appeals for Franklin County is reversed.

*Judgment reversed.*

CELEBREZZE, C. J., W. BROWN, P. BROWN, SWEENEY and LOCHER, JJ., concur.

C. BROWN, J., dissents.

PUTMAN, J., of the Fifth Appellate District, sitting for Holmes, J.

CLIFFORD F. BROWN, J., dissenting. The issue of the unlawful incarceration of Frank Johns was determined against the state of Ohio in the habeas corpus action in the United States Court of Appeals in *Johns* v. *Perini* (C.A. 6, 1972), 462 F. 2d 1308. To contend that *Johns* v. *Perini, supra,* is not *res judicata* misses the mark. The Court of Appeals for Franklin County hit the bull's eye by concluding that the determination of unlawful incarceration in the habeas corpus action in the federal court constituted proof by a preponderance of the evidence that Johns was unlawfully incarcerated by the state of Ohio, and that the trial court failed to follow the mandate of the Ohio General Assembly in concluding that Johns had no claim for relief.

To hold otherwise than the Court of Appeals below is to dis-

regard the recent pronouncement of this court in *Trautwein* v. *Sorgenfrei* (1979), 58 Ohio St. 2d 493, which held that a point of law which was actually and directly at issue in a former action between the same parties may not be relitigated but is binding in a subsequent action. See, also *Hicks* v. *De La Cruz* (1977), 52 Ohio St. 2d 71; *Columbus* v. *Union Cemetery* (1976), 45 Ohio St. 2d 47.

It is immaterial that the issue determined in the prior action between the same parties to the action was made by the United States Court of Appeals rather than by a state court where the present action is being determined. *Symons* v. *Eichelberger* (1924), 110 Ohio St. 224; *Horne* v. *Woolever* (1959), 170 Ohio St. 178, paragraph six of the syllabus.

The grant of the extraordinary writ of habeas corpus is for the purpose of conclusively determining the illegality of the restraint or custody under which a prisoner is held, *i.e.,* unlawful incarceration. This grant of habeas corpus relief authorized release from confinement. It was a successful collateral attack nullifying the original judgment and sentence. *Bar Assn.* v. *Steele* (1981), 65 Ohio St. 2d 1; *In re Lockhart* (1952), 157 Ohio St. 192; *State* v. *Dean* (1958), 107 Ohio App. 219, 225-226; 49 Corpus Juris Secundum 792, 809. See, generally, *Fay* v. *Noia* (1962), 372 U. S. 391.

*Cuyler* v. *Sullivan* (1980), 446 U. S. 335,[2] and *Tymico* v. *State* (1977), 52 Ohio App. 2d 298, are no aid in determining the issue we must decide here.

---

[2] *Cuyler* v. *Sullivan, supra,* holds, at page 343:

"[A] state criminal trial, a proceeding initiated and conducted by the State itself, is an action of the State within the meaning of the Fourteenth Amendment. * * * Unless a defendant charged with a serious offense has counsel able to invoke the procedural and substantive safeguards that distinguish our system of justice, a serious risk of injustice infects the trial itself. * * * When a State obtains a criminal conviction through such a trial, it is the State that *unconstitutionally deprives the defendant of his liberty.* * * *" (Emphasis added.)

The above language, by holding that inadequate legal assistance guaranteed by the Sixth Amendment constitutes unconstitutional deprivation of defendant's liberty, is the equivalent of holding that such ineffective legal assistance resulting in confinement is unlawful incarceration. The rationale of *Cuyler* supports the contention of appellee Johns.